[No. 2,392.]

## JOHN C. WHITE v. WILLIAM H. LYONS.

COMPLAINT EITHER LEGAL OR EQUITABLE NOT DEMURRABLE.—If a complaint states facts which entitle the plaintiff to relief, either legal or equitable, it is not demurrable on the ground that it does not state facts sufficient to constitute a cause of action.

EQUITABLE COMPLAINT SETTING OUT LEGAL CAUSE OF ACTION.—Though a complaint purporting to be a bill in equity is insufficient as such, yet if the facts alleged are cognizable in a Court of law, the proper relief will be administered; and a demurrer for want of facts sufficient to constitute a cause of action will not lie.

RECOVERY BACK OF MONEY RECEIVED FOR ALLEGED ILLEGAL PURPOSE.—Where, in a suit to recover money in the hands of defendant, it appeared that he had been employed as an attorney, and furnished with money to purchase school land warrants, and therewith to procure title to certain lieu lands, and that at his advice some of the certificates of purchase were taken in the names of third persons, and assigned to plaintiff, and defendant set up in defense that (the taking of the certificates in that way being contrary to law) the money was paid to and received by him for an illegal purpose, and could not be recovered back; held, that the contract under which the money was received was not unlawful, and that though the purchase of the certificates referred to might have been illegal, yet, it appearing that he had been fully credited with all moneys paid for them, his defense could not avail him.

COMPUTATION OF INTEREST—REDUCTION FROM TEN TO SEVEN PER CENT.—The Act of March 30th, 1868 (Stats. 1867-8, p. 553), reduced the rate of interest, in case of the absence of a contract, from ten to seven per cent per annum; and the effect was that, though ten per cent might be computed up to the taking effect of that Act, only seven per cent was allowable afterwards.

STATUTE REDUCING INTEREST PROSPECTIVE IN OPERATION.—The Act of March 30th, 1868 (Stats. 1867-8, p. 553), reducing the rate of interest, was only prospective in its operation, and was not intended to take away or impair rights which had already accrued under the prior statute.

APPEAL from the District Court of the Fifth Judicial District, San Joaquin County.

The complaint in this case, after setting forth facts entitling him to judgment at law against the defendant, prayed for an accounting that defendant might be adjudged to pay to plaintiff, in gold coin, what might appear on such accounting to be due, and for general relief. To this defendant demurred, on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer being overruled, and an answer put in, there was a trial before the Court, and a judgment rendered on November 18th, 1868, in favor of plaintiff, for the sum of one thousand six hundred and thirteen dollars and seventy cents, and interest at the rate of ten per cent per annum on nine hundred and thirteen dollars and seventy cents thereof from November 18th, 1863, and on seven hundred dollars thereof from July 1st, 1864—in all two thousand three hundred and seventy-six dollars, in gold coin—the judgment to draw interest at seven per cent per annum. Findings were filed sustaining the judgment. The defendant moved for a new trial, which was denied, and he then took this appeal from the judgment.

*Hall & Montgomery* and *S. P. Scaniker*, for Appellant.

We must look to the relief sought, as well as to the facts stated in a complaint, to determine the forum to which the plaintiff has brought his case for redress. Here he has appealed to a Court of equity, and he must show that he has an equitable cause of action. But on the facts alleged no foundation is laid for equity jurisdiction for accounting—a relief afforded only where mutual or complicated accounts and dealings exist between the parties. The exact amount of money placed in defendant's hands is fixed at three thousand three hundred dollars, and the exact amounts ex-

pended by him are fixed with the same certainty. It is true there is a charge of fraudulent conversion; but such a charge will not sustain an action in equity for an account. There was a plain and complete remedy at law; and it is a familiar principle and well established, that in such case there is no foundation for the interposition of a Court of equity, and no equitable jurisdiction. The demurrer ought, therefore, to have been sustained.

In the procuring of the certificates both parties manifestly coöperated for overreaching the law and securing forbidden and unjust advantages—a purpose immoral and illegal, whatsoever may have been the moral sense that prompted them. The fund was committed to the one party by the other, dedicated to the procuring of title from the State for the latter's lands, by methods contravening the letter and spirit of the State's land system. As between principals and agents in all such cases, the guilt is deemed to be equal, and the maxim is: *In pari delicto potior est conditio defendentis.* The money, thus situated, is not recoverable by the principal. (Story on Agency, Sec. 235, and note 2, Sec. 344; *Perkins* v. *Savage*, 15 Wend. 412; *Morgan* v. *Graff*, 5 Den. 365; *Gregory* v. *Haworth*, 36 Cal. 653; *Martin* v. *Wade*, 37 Cal. 168.)

The judgment was also against law in allowing interest at any rate greater than seven per cent per annum—that being the rate fixed by law at the date of the judgment.

*J. H. Budd,* for Respondent.

The old distinction between the forms of legal and equitable pleadings are done away with, and the code requires only statement of the facts constituting a cause of action. (Practice Act, Sec. 39; *Piercy* v. *Sabin*, 10 Cal. 27; *Goodwin* v. *Hammond*, 13 Cal. 169; *Payne* v. *Treadwell*, 16 Cal. 243.) A demurrer will not lie to the prayer of a complaint.

The contract between plaintiff and defendant was one between an attorney at law and his client, and was not illegal. Plaintiff understood that the land was to be secured to him by the location of school land warrants. In this there was nothing illegal or against public policy. Under this contract, and with this understanding, the money was paid by the plaintiff to the defendant, and whatever was done after this was done by defendant, and by and through his advice as the attorney of plaintiff. It is the first case, and will, probably, be the last, in which an attorney at law has taken his client's money and then advised him to do and have done acts (which the attorney now claims is against law), and then coolly claimed that he had a right to retain the money, for the reason that his client acted under his advice.

If defendant can be held for the money as received by him to the use of plaintiff, then there was an implied contract to repay the same to plaintiff with legal interest from the time the defendant converted the money to his own use. And the rate of interest, as it was fixed by statute at the time of the conversion, became a part of this implied contract.

By the Court, CROCKETT, J.:

The demurrer to the complaint was properly overruled. Under the code there is but one form of action in this State, and if the complaint states facts which entitle the plaintiff to relief, either legal or equitable, it is not demurrable on the ground that it does not state facts sufficient to constitute a cause of action. If the facts stated are such as address themselves to the equity side of the Court, the appropriate relief will be granted by the Court, sitting as a Court of equity. On the other hand, if the facts alleged are purely cognizable in a Court of law, the proper relief will be administered in that form of proceeding. But a complaint

which states a sufficient cause of action, either at law or in equity, is not demurrable as not stating facts sufficient to constitute a cause of action. In this case the defendant does not question the sufficiency of the facts alleged to constitute a cause of action in a proceeding at law, but insists that this complaint is a bill in equity, and that a Court of equity has no jurisdiction of the case. In that event, the Court will treat it as an action at law, and administer the proper relief in that form of proceeding.

Nor can we disturb the judgment on the ground that the findings are not justified by the evidence. If the evidence does not preponderate in support of the findings, there is at least a substantial conflict in it; and in such cases it is the well settled practice of this Court not to disturb the judgment.

The defendant, however, insists that the plaintiff is not entitled to recover, because the transaction between the parties was illegal, and the money which is sought to be recovered was paid by the plaintiff and received by the defendant for an unlawful purpose, and that no cause of action can arise out of a transaction which was in itself illegal and contrary to public policy. But the answer to this point is, that the contract between the parties under which the money was received by the defendant was not unlawful or contrary to public policy. The plaintiff desired to secure for himself the title of the State to certain lands, and employed the defendant, as an attorney at law and as a person skilled in that branch of business, to procure the title. The plaintiff appears to have been ignorant of the particular method by which the title of the State was to be obtained, except that it was to be effected by means of school land warrants, or certificates of purchase, for what are termed "lieu lands;" that is, lands to be selected by the State in lieu of sixteenth and thirty-sixth sections, as authorized by law in certain cases. It appears from the findings that the defendant ac-

cepted this employment, and undertook to procure the title in this method. The money was paid by the plaintiff for this purpose. But subsequently, under the advice of the defendant, and at his suggestion, certain of the certificates were taken in the names of other persons, for the use of the plaintiff, and were afterwards assigned to him. This part of the transaction is claimed to have been illegal, and a fraud upon the law. If this be conceded, it does not aid the defendant. He has been credited in the judgment with all sums paid by him on account of these certificates, and there is no proof that any portion of the money which he received from the plaintiff, except that which was paid on account of these certificates, was to be, or was, in fact, applied or used in any illegal transactions. On the contrary, after crediting the defendant with all his disbursements and a reasonable compensation for his services, there remains in his hands a large sum, which the findings show he has converted to his own use. No reason, founded either in law or justice, is perceived, why this money should not be refunded with interest. But, I think, the Court erred in fixing the rate of interest at ten per cent per annum up to the date of the judgment. When the conversion occurred that was the rate fixed by statute in transactions of this character. But the Act of March 30th, 1868, reduced the rate from ten to seven per cent per annum; and from the time when this Act took effect the interest should have been computed at seven per cent per annum. In the absence of a contract for interest, it is only allowed as damages for a failure to pay the money due (15 Wend. 80); and it is competent for the Legislature to fix the amount which shall be recovered. But the Act reducing the rate was only prospective in its operation, and was not intended to take away or impair rights which had already accrued under the prior statute. In *Bullock* v. *Boyle*, 1 Hoffman, N. Y. Ch. R., 294, the effect of statutes modifying the rate of interest is fully and elaborately discussed,

and the authorities collated by the Vice Chancellor; and the conclusion at which he arrived is, that a change in the rate, as a general rule, operates only prospectively, and does not affect rights already accrued. On this point, see, also, *Thornton* v. *Fitzhugh*, 4 Leigh R. 209.

The judgment is affirmed, except as to the rate of interest; and in respect to the computation of interest, the Court below is directed to modify the judgment by computing the interest at ten per cent per annum up to the time when the Act of March 30th, 1868, took effect, and thereafter at the rate of seven per cent per annum; and it is further ordered that neither of the parties recover costs on this appeal.

Mr. Justice WALLACE did not participate in the foregoing decision.