James W. Boyd, Appellant, v. Woodbury County, Iowa, and George W. Thacker, Appellees.

Specific Performance: CONDITIONAL OFFER TO SELL. Where it appears that the vendor in a contract to sell land agreed to furnish an abstract satisfactory to the purchaser, a tenant in possession, and upon payment of the price to make him a quitclaim deed, and there is a refusal to accept the title and pay over the money, the purchaser cannot enforce specific performance upon a subsequent tender and demand for deed, even though he may have continued in possession and made improvements.

Appeal from Woodbury District Court.—Hon. William Hutchinson, Judge.

Thursday, January 28, 1904.

Suit in equity for the specific performance of an alleged agreement for the sale of real estate. The trial court dismissed plaintiff's petition, and he appeals.—Affirmed.

Sullivan & Griffen and Buckley & Calderhead for appellant.

Strong & Whitney for appellees.

DEEMER, C. J.—After some negotiation looking to the sale of the land in controversy, which is a fractional forty acres lying along the Missouri river, the board of supervisors for and on behalf of Woodbury county, which county obtained title to the property through foreclosure of a school-fund mortgage, passed and entered upon its records the following resolution: "Resolved that this Board does hereby sell unto James W. Boyd the Southeast Quarter of the Southwest Quarter of Section 21, Township 86, Range 47, for the sum of $225.00 to be paid by said James W. Boyd upon delivery to him of an abstract showing title in Woodbury County satisfactory to said James W. Boyd, and a Quit Claim deed to said Southeast Quarter of Southwest Quarter of section 21, Township 86, Range 47, said deed to be signed by the proper officers on behalf of the County." Plaintiff, who was then occupying the land as a tenant of Woodbury county, claims that his lease was thereupon canceled, and that he proceeded under this resolution to make improvements upon the land, and to use and occupy the same down until about June 3, 1901, when he went before the board of supervisors, by his attorney, made a tender of the purchase price, and demanded a deed, which demand was refused, and that thereupon the board sold the land to the defendant Thacker. There is no very serious conflict in the evidence. After the passage of the resolution the board procured an abstract of title to the land at an expense of something more than $20, which it delivered to the plaintiff. Plaintiff submitted this abstract to an attorney, who discovered certain defects therein, some of which he cured or undertook to cure, but, finding certain taxes due and unpaid, he (the attorney) went before the board and requested it to pay the taxes and fix up the title. The board refused to do this, and, finding that plaintiff would not accept a quitclaim deed for the land in the condition in which the title then was, it proceeded almost immediately to dispose of the same to defendant Thacker. The land, as we have said, is bounded on the west by the

Missouri river, and was subject to erosiom. This was proba-
bly the reason why the county wished to dispose of it. But
it expressly refused in all of its negotiations with plaintiff
to give a warranty deed therefor, and insisted at all times
that the purchaser should take the title as he found it. The
resolution which we have quoted recites a sale of the land to
plaintiff for a named sum, but expressly provides that this
is to be paid upon delivery of an abstract showing title in
Woodbury county satisfactory to Boyd, and a quitclaim
deed, according to previous negotiations. It will be noticed
that there is nothing on the face of this showing an accep-
tance on the part of the plaintiff. Conceding that such an
acceptance may be shown by parol, we have nothing but
plaintiff's claim that he entered into possession under the re-
solution, and made certain improvements upon the land as
owner. Plaintiff's claim that the lease under which he held
possession of the land at the time the resolution was passed
by the board was canceled, is not supported by the record,
and his possession not being exclusively referable to this
resolution does not constitute part performance, nor does
it in itself amount to an acceptance of the proposition
made by the board. Had defendant county attempted
to collect the purchase price for the land under this resolu-
tion, with no more of a showing than is made in the case
with reference to the acceptance of the proposition by the
plaintiff, it would undoubtedly have failed.

But let us say there is sufficient evidence of accept-
ance to justify a finding that a contract was entered between
the plaintiff and the board of supervisors representing the
county, the question remains, is there a sufficient showing to
justify a court of equity in passing a decree for specific per-
formance? Plaintiff did not agree to pay for the land ex-
cept on condition that he was furnished an abstract showing
title in Woodbury county satisfactory to him. This may be
a little ambiguous on its face, but when taken in connection
with the admissible extrinsic evidence, its meaning becomes
clear. The county officials did not wish to make any warranty

as to title, and, to avoid any room for controversy on this point, expressly provided that it should make a quitclaim deed for the property. Plaintiff did not know what the title was, and so he demanded an abstract before taking any chances about it. It was also provided that he should not be obligated to pay for the land unless this abstract showed title in Woodbury county which was satisfactory to him. The county made no agreement to perfect the title. Indeed, this was not contemplated by the parties. Plaintiff was taking his chances on the title, and to protect himself entered into an obligation to pay in the event the abstract showed a title that was satisfactory. This the abstract, when delivered, did not do, and plaintiff thereupon attempted to induce the county to perfect the title. The county refused to do so, on the ground that it was selling just such title as it had, and had not undertaken to cure any defects therein. Plaintiff would not pay over the money because the abstract did not show a satisfactory title, and defendant county would not fix up the title as demanded. Deeming, then, that the matter was at an end, the board thereupon sold the land to Thacker for the sum of $225. Had the matter stopped with the demand made by the plaintiff or his attorney, it is manifest that defendant county was in no position to require plaintiff to take and pay for the land. It was not, as we have already said, bound to make a perfect title, nor was plaintiff bound to pay unless the abstract was satisfactory to him. The county could not have enforced payment without showing that the title as exhibited by the abstract was satisfactory to the plaintiff. This it could not do, for the reason that plaintiff was all the time insisting that the title was not satisfactory. He was not bound, therefore, to pay for the land. While there may be cases where specific performance of an agreement which is not mutual will be enforced, this is not one of them. Here the minds of the parties never in fact met, or, if they did, it was upon the single proposition that plaintiff should take and pay for the land in the event the showing in the abstract as to title was satisfactory to him. It was in

truth but little more than a mere option given to the plaintiff to take and pay for the land in the event he found the title was such as was satisfactory. Plaintiff's demand for action on the part of the board with respect to the title, and his refusal to accept the title as offered, absolved the county from further liability, and it was justified in thereafter selling the land to Thacker.

We are not to be understood as holding that a contract, to be valid, must be signed by both parties. This of course is not required. But something more than a mere proposition on one side is needed to constitute a contract. There must be some kind of an acceptance of the proposition, and when this acceptance is shown, and a contract is established, it then becomes the duty of the court to construe the contract in arriving at the rights of the respective parties. That plaintiff could not be required to take and pay for the land under the circumstances shown by this record, see *Easton v. Lockhart,* 10 N. D. 181 (86 N. W. Rep. 697); *Luse v. Deitz,* 46 Iowa, 205; *Richmond v. Dubuque Co.,* 33 Iowa, 422; *Hopwood v. McCausland,* 120 Iowa, 218.

The trial court rightly dismissed plaintiff's petition, and its decree is AFFIRMED.