McFARLAND, APPELLANT, *v.* STILLWATER COUNTY, RESPONDENT.

(No. 7,934.)

(Submitted December 11, 1939. Decided January 13, 1940.)

[98 Pac. (2d) 321.]

*Mr. Stanley E. Felt,* for Appellant, submitted a brief and argued the cause orally.

*Mr. P. R. Heily*, for Respondent, submitted a brief; *Mr. Neil D. Heily*, argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an appeal from a judgment in favor of Stillwater county in a case wherein the plaintiff, McFarland, sought to recover the sum of $317.79 which he paid to the county under the following circumstances:

The plaintiff was a depositor in the Stockman's National Bank of Columbus on the 15th day of December, 1924, and the owner of three shares of its capital stock. On that date he executed his note to the bank for the sum of $500, which was placed to his credit, making his total deposit $2,116. On January 7, 1925, the bank was declared insolvent and a receiver was appointed. Prior to the insolvency declaration, and prior to the maturity of the note, the bank pledged it to the treasurer of Stillwater county as supplemental security for county funds then on deposit in the bank. On August 23, 1928, the receiver, in distributing the assets of the bank, issued a check in the sum of $317.79 to the plaintiff as his share, based upon his deposit of $2,116. The receiver mailed this check to the county treasurer, who notified the plaintiff of the fact that the check was in his possession. The plaintiff on August 24, 1928, endorsed the check and paid the amount to the county treasurer.

Plaintiff bases his right to recover upon the ground of mistake, in that, when he endorsed the dividend check and paid the proceeds of the check to the county, he thought the county was the owner and holder of the note and as such entitled to enforce payment, whereas, since it was not the owner or holder, and since, as he contends, the pledge was unlawful, he was entitled, as a matter of law, to offset the note against his deposit in the bank.

Plaintiff testified that he knew that the note had been pledged by the bank to the county as collateral security shortly after its execution in 1924, but stated that he understood that the county was the legal owner of the note with the right to enforce collection thereof; that the county treasurer had demanded of him that he pay the note to it; and that he did not discover the mistake until April, 1931, when the bank instituted action against

him on the note, alleging in the complaint that it was the lawful owner and holder thereof.

The evidence offered by the defendant consisted of testimony of the county attorney, who said that within two or three weeks after plaintiff paid the money in question he had a conversation with plaintiff in which plaintiff asked him his idea with reference to plaintiff's right to a refund; that the county attorney then advised him that he did not think "anybody was very clear as to whether the county had a right to accept that form of security for county deposits." The county attorney testified that he then advised plaintiff to bring an action to test the question. It is thus apparent that both parties were in doubt as to the legal right of the bank to pledge its assets to secure a deposit.

Before proceeding to the merits of the controversy, it is well ▇ to note some general principles applicable to such an action. The weight of authority sustains the view that money paid voluntarily, but under a mistake of law, cannot be recovered. (48 C. J. 755.) There is, however, respectable authority to the contrary. The cases supporting the minority view are cited in 21 R. C. L., p. 172, note 4, and in 48 C. J. 757, note 52. In addition to the cases there cited supporting the minority view, are the following: *English* v. *Smith,* 123 Conn. 572, 196 Atl. 781, *Allen Lumber Co.* v. *Howard,* 254 Ky. 778, 72 S. W. (2d) 483, and *Kentucky West Virginia Gas Co.* v. *Preece,* 260 Ky. 601, 86 S. W. (2d) 163, 166. In the last cited case the court quoted the following from one of its earlier cases, *Underwood* v. *Brockman,* 4 Dana (Ky.), 309, 29 Am. Dec. 407: " 'It is well known, that all persons do not understand some of the plainest rules of law, and that no person, however enlightened, knows all the law. And if one, ignorant of a plain principle of law, shall, without any other motive or consideration than an erroneous opinion respecting his legal rights and obligations, release a right, pay money, or undertake to do any act, what principle of law, or dictate of justice or policy, would require him to be bound, as with a Gordian knot, which nothing but the sword could loose? Why should he be punished in such a case, for such ignorance? Or why should the other

party be enriched or benefited, without any equivalent or merit of any kind or to any extent whatsoever? A mistake of fact might be sufficient to entitle to relief or exoneration, because such a mistake would show, that the contract was not such as the parties, or at least one of them, contemplated or would have made, had there been no mistake. Might not a mistake as to the law, in a parallel case, be equally availing, and for precisely the same reason? Undoubtedly it might, and, as we think, should; and such we understand to be the rational and consistent doctrine of the common law established in Kentucky.' ''

If the mistake in question here be regarded as one of law and not of fact, plaintiff should have the right to recover, particularly in view of our statute, section 7486, Revised Codes, reading in part: ''Mistake of law constitutes a mistake, within the meaning of this chapter, only when it arises from:

''1. A misapprehension of the law by all parties, all supposing that they knew and understood it, and all making substantially the same mistake as to the law;'' etc.

Under an identical statute the supreme court of California has held that a recovery is proper where the mistake is one of law. (*Gregory* v. *Clabrough's Exrs.*, 129 Cal. 475, 62 Pac. 72.) The supreme court of North Dakota, in *Jacobson* v. *Mohall Tel. Co.*, 34 N. D. 213, 157 N. W. 1033, L. R. A. 1916F, 532, took the opposite view, but we believe the rule followed by the supreme court of California to be the sounder. In fact, this court has already in an analogous case adopted this rule. (*Hicks* v. *Stillwater County*, 84 Mont. 38, 274 Pac. 296.)

As in the case of a mistake of fact, the right of recovery is ''bottomed upon the equitable doctrine that an action will lie for the recovery of money received by one to whom it does not in good conscience belong, the law presuming a promise to repay.'' (48 C. J. 761, note 85; *Smith* v. *Rubel*, 140 Or. 422, 13 Pac. (2d) 1078, 87 A. L. R. 644.) The proper form of action is an action for money had and received. (41 C. J. 50.)

The disposal of the appeal on its merits involves the validity of the defenses relied upon. The substance of the first defense is that the county had a lawful right to collect upon the note which had been pledged to it as security. The plain-

tiff contends that the county had no right to collect on the note because it was unlawful at that time (prior to the 1930 amendment of the National Banking Act, 12 U. S. C. A., sec. 90, giving such authority to pledge) for a national bank to pledge any of its assets to secure its deposits. This is clearly the law as laid down by the decisions of the Supreme Court of the United States. (*Texas & P. R. Co.* v. *Pottorff*, 291 U. S. 245, 54 Sup. Ct. 416, 78 L. Ed. 777; *Marion* v. *Sneeden*, 291 U. S. 262, 54 Sup. Ct. 421, 78 L. Ed. 787; compare *Mays* v. *Board of Commrs. of Creek County*, 164 Okl. 231, 23 Pac. (2d) 664.)

The defendant argues that even though such a pledge was not allowed by the National Banking Act, yet upon the authority of *Fergus County* v. *Osweiler*, 107 Mont. 466, 86 Pac. (2d) 410, 120 A. L. R. 1457, the county had the right to recover on the note. With this contention we do not agree. In the *Osweiler Case*, supra, this court held that even though the taking of a note by the county in exchange for an antecedent indebtedness under the circumstances there involved, violated the constitutional provision against postponement of debts, yet the county could recover on the note. The holding was based upon the proposition that to refuse recovery on the note would injure those who were designed to be protected by the law making the note illegal. In this case the law prohibiting a bank from pledging its assets to secure deposits was designed to protect depositors from discrimination. If the county were permitted to enforce the pledge, one depositor would be given a preference to that extent over other depositors, and this the law prohibiting the bank from making the pledge was designed to prevent. In other words, refusal to enforce the illegal pledge here would not produce harmful effects on the parties for whose protection the law making the pledge illegal exists, as was the case in *Fergus County* v. *Osweiler*, supra.

The county was not the owner or rightful holder of the note so as to prevent plaintiff from denying its right to collect it.

The second defense is that the payment to the county was a voluntary one and as such precludes recovery in this action. The facts show that the plaintiff made this payment to

the county because he was of the belief that the county was the lawful holder of the note and entitled to enforce its collection. After the insolvency of the bank the county notified the plaintiff that it held the note and expected payment. A second letter was written by the county treasurer, informing the plaintiff that the state examiner demanded payment. The receiver sent the dividend check, not to the plaintiff, but to the county treasurer and directed endorsement of the payment of the amount on the receiver's certificate. The voluntary character of the payment is wholly immaterial when made, as here, under mistake.

The next defense relied upon is that of the statute of limitations. Defendant contends that the action was barred by section 9033, Revised Codes, which provides for a two-year limitation for actions "for relief on the ground of fraud or mistake." Plaintiff takes the position that section 9031, the three-year statute, is the controlling statute. That section provides for a three-year limitation for "an action upon an obligation or liability, not founded upon an instrument in writing, other than a contract, account, or promise."

As above noted, this action is for money had and received, and rests upon the legal fiction of a promise implied by law to return that which in equity and good conscience should be returned to him from whom it was received. Such an action falls within section 9031. (*Schaeffer* v. *Miller*, 41 Mont. 417, 109 Pac. 970, 137 Am. St. Rep. 746.) In such a case as this, the mistake is but a mere incident to the cause of action. As was stated in the analogous case of *Independent School District* v. *Independent School District*, 123 Iowa, 455, 99 N. W. 106: "But the fact of such mistake is a mere incident to the cause of action as brought by plaintiff. It serves to explain how it came about that the moneys now sought to be recovered reached the hands of the defendant district. The action, therefore, is not grounded upon the mistake alleged, but rather upon the fact that the defendant district has in its possession a sum of money which it is asserted belongs of right to the plaintiff." Section 9033, supra, has to do only with actions where mistake of facts is the basis or gravamen of the action.

Here the payment was made on August 24, 1928. The action was instituted on August 24, 1931, or within the three-year period. (*Kelly* v. *Independent Pub. Co.*, 45 Mont. 127, 122 Pac. 735, 38 L. R. A. (n. s.) 1160, Ann. Cas. 1913D, 1063.)

The judgment is reversed and the cause remanded with direction to enter judgment for plaintiff.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES MORRIS, ERICKSON and ARNOLD concur.