[Civ. Nos. 20306, 20307. Second Dist., Div. Two. Mar. 18, 1955.]

CONSOLIDATED LIQUIDATING CORPORATION (a Corporation), Respondents, v. JOHN ANSON FORD et al., Appellants.

Harold W. Kennedy, County Counsel (Los Angeles), and Gordon Boller, Deputy County Counsel, for Appellants.

Laughlin E. Waters, United States Attorney, Musick, Peeler & Garrett, Joseph D. Peeler and John P. Pollock for Respondents.

MOORE, P. J.—Two identical actions have been consolidated for this appeal. A discussion of one (20306) will serve to show why the same order is made in both. The facts are not uncommon.

Respondent, Consolidated Liquidating Corporation, paid under protest to the tax collector of Los Angeles County $106,898.54, the amount of "escape possessory interest tax assessments" for the years 1942 to 1947, inclusive. The assessments were made with respect to properties which were owned by the government of the United States of America and had been used or occupied by Consolidated Western Steel Corporation for the purpose of producing certain commodities for the government or its agencies under "cost-plus-a-fixed-fee" contracts which obligated the government or its agencies to reimburse respondent with respect to certain costs, including taxes of the type so assessed to which it might be subjected in the performance of such contracts.

On November 20, 1951, respondent filed with the office of the board of supervisors, a claim for refund of such payment of taxes and penalties. Although the supervisors were by their counsel advised on February 19, 1952, to reject such claim, seven days later, the same counsel joined the department of justice in successfully requesting a postponement of action on the claim until March 4, 1952. Similar requests for postponement of action by the board were subsequently made for the purpose of providing federal agencies an opportunity for considering the acceptability of the settlement proposed by the county counsel. After the county counsel had been advised, June 15, 1953, that his proposal of March 18, 1949, had been rejected by the attorney general, respondent filed with the board of supervisors on July 22, 1953, a "Request for Immediate Action on Claim for Refund" whereby respondent requested approval or denial of its claim in order to provide statutory basis for court action for recovery of the taxes. On July 29, 1953, the clerk of the board of supervisors notified counsel for respondent that its petition for action on the claim for refund had been denied by formal order on July 28, 1953. This action followed whereby respondent prayed that a writ of mandate issue to defendants as a board of supervisors commanding them to act upon and either approve or reject the claim for refund. A general demurrer having been overruled, judgment was duly entered that a peremptory writ of mandate issue to defendants,

requiring them to consider, act upon and either approve or reject that certain claim for refund of taxes filed with the board of supervisors by respondent on November 20, 1951.

On this appeal, it is contended (1) that petitioner's right was barred by limitations long before its request for immediate action on the claim for refund; (2) that a suitor cannot postpone doing an act he is legally required to do and thereby indefinitely suspend the running of limitation against his right; (3) that the board's rejection of the claim for refund, even under compulsion, would constitute merely an ineffectual rejection and would not revive the outlawed claim. Pursuant to such theses, appellant asserts that the erroneous payment of taxes occurred December 6, 1948, and contends (a) that the action is barred by subdivision 1 of section 338 of the Code of Civil Procedure*; (b) that the right of action to enforce a refund expired December 6, 1951; (c) that failure to sue prior to the latter date was fatal to respondent's claim; (d) that the mere filing of a claim with the board did not suffice to toll the statute; (e) that, under section 5103 of Revenue and Taxation Code, if a claim for refund is rejected by the board, suit thereon must be filed within six months from such rejection; (f) that under section 29714 of the Government Code, if the board refuses or neglects to act on a claim within 90 days, such inaction must be construed as a rejection of the claim and the claimant must commence his action within the six months immediately following the 90-day period; (g) that 90 days from November 20, 1951, the date of filing of the claim, the claim was constructively denied; (h) that in such event, respondent had to file suit by August 20, 1952. By reason of such statutes and respondent's noncompliance therewith, appellants contend that their demurrer should have been sustained with finality.

The vice of appellants' argument lies in the fact that the Government Code, sections 29714 and 29715, do not require action to be filed at the end of the 90-day period. Both sections† contain permissive clauses, allowing a claimant to

---

*The periods prescribed for the commencement of actions other than for the recovery of real property, are as follows:

Within three years:

1. An action upon a liability created by statute, other than a penalty or forfeiture.

†Government Code, section 29714. "If the board refuses or neglects to allow or reject a claim for 90 days after it is filed with the clerk, the

treat the neglect to act as a rejection of the claim, but they are permissive only and gain neither force nor pertinency from the history of section 4078 of the Political Code, the progenitor of 29714.

■ Section 338, Code of Civil Procedure, is not applicable to the provisions of the Revenue and Taxation Code, sections 5096 and 5097. The latter section deals specifically with the refund of taxes "erroneously or illegally collected." It forbids any refund except on a verified claim, "filed within three years after making of the payment." Section 5103 of the same code comes into play and permits the claimant to commence an action within six months from the time of rejection. That makes a minimum of three and a half years assuming prompt action by the board in rejecting the claim.

■ The remedy provided by the last above cited section affords independent relief in all cases coming within its provisions and is not excluded by the terms of former statutes. (*Stewart Law & Collection Co.* v. *County of Alameda*, 142 Cal. 660, 665 [76 P. 481].) "Independent" as used in the last above sentence means not subject to control by others, not subordinate. (Webster's Inter. Dict.)

In *Otis* v. *City & County of San Francisco*, 170 Cal. 98 [148 P. 933], after it had been ascertained that certain taxes had been illegally collected, a verified claim for refund was duly presented to the supervisors. Formally, they neither allowed nor rejected the demand. The city and county insisted that the plaintiff should have taken affirmative action by way of mandate. But the court held: "Where a right is thus created by statute and the method of securing that right pointed out, in all essentials the legislative direction must be followed." (*Ibid.* p. 100.) Nonaction of the board tolled the statute. Those taxes had already been declared illegal. In the case at bar, the question of the illegality of the taxes was in dispute; hence allowance or rejection of the claim had to be made by the board before action to recover could be maintained.

The other contentions of appellants have been answered by this court in *Hochfelder* v. *County of Los Angeles*, 126 Cal.App.2d 370 [272 P.2d 844], decided after this appeal had

---

- claimant may treat the refusal or neglect as final action and rejection on the ninetieth day."

Section 29715. "A claimant dissatisfied with the rejection of his claim or with the amount allowed him may sue the county on the claim at any time within six months after the final action of the board."

been lodged. The appellants there contended that their interpretation of section 29714 made 90 days' inaction of the board constructive rejection and required action by the respondent within six months. We there scorned the suggestion that unless the claim is deemed rejected on the ninetieth day after filing by operation of law, a claimant would be in a position to delay indefinitely the running of the statute of limitations. All that is required to start the running of the statute *is for the board to pass* upon the claim, as it was intended by the Legislature that it should do. We there pointed out (p. 374) (1) that the purpose of section 29714 was to obviate a situation in which the board, by its nonaction, could defer indefinitely a claimant's right to sue; (2) that the import of the section is that a claimant *may* deem the nonaction of the board as tantamount to a final rejection of the claim on the ninetieth day; (3) that it accords to the claimant only the privilege of regarding the claim as denied and (4) that while he may, he is not required to exercise such privilege. In the words of Mr. Justice Fox: (p. 375) "he may elect to wait until the board discharges its responsibility by acting upon his claim in due course (Gov. Code, § 29713) . . . By the clear terms of section 29715 of the Government Code and section 342 of the Code of Civil Procedure, plaintiffs had six months from that date in which to file the present action."

In the light of the Hochfelder decision, a discussion of the other points discussed in the briefs would be fruitless.

Both judgments are affirmed.

McComb, J., and Fox, J., concurred.